**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMIR EDMONDS** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 20-6161 |
| | : | |
| **MARK CAPOZZA,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                             **February 16, 2022**

A Delaware County, Pennsylvania jury of white citizens convicted an African American man after his lawyer twice challenged the potential jury pool consisting of one African American among the seventy potential jurors. The trial judge held an evidentiary hearing on trial counsel's objections. The judge evaluated the testimony of two officials explaining the County's race-neutral jury summons process. The judge found no constitutional error in the random selection of the seventy citizens in the jury pool based on several data points. The Pennsylvania courts denied the appeal from the conviction and post-conviction petition including arguments challenging the panel. The man now seeks habeas relief from his conviction arguing the trial judge violated federal law by denying his objection to the jury pool containing only one African American. Judge Reid recommends we deny this claim. The man objects to Judge Reid's recommendation. But he also adds—should we agree with Judge Reid—we should find ineffectiveness by his trial and appellate counsel for not presenting statistical and census data when contesting the jury pool.

We adopt and approve Judge Reid's recommendation and overrule the man's one objection. We also deny the man's new claim of ineffectiveness based on his counsel's conduct in evaluating the jury pool as waived and untimely. We deny the petition for habeas relief and a certificate of appealability.

I.      Background

A Pennsylvania trial jury of entirely white citizens sitting in Delaware County convicted African American Jamir Edmonds of first-degree murder on May 1, 2014 following a three-day trial. On the first day of trial, and before the start of voir dire, Mr. Edmonds's trial counsel objected under *Batson*[1] to the seventy-person jury panel because it contained only one African American.[2] The trial court denied his objection.[3]

Mr. Edmonds's counsel renewed his objection to the entire make-up of the jury panel as consisting of only one African American and moved to strike the entire jury panel and have another panel brought in for jury selection.[4] The trial court then held a hearing on Delaware County's jury selection process. Nancy Alkins, Jury Administrator for Delaware County, and Eileen Paden, Deputy District Court Administrator for the Commonwealth's Administrative Office of Pennsylvania Courts, testified.[5] Ms. Alkins testified the County issued 800 summons for jury duty through the Administrative Office of Pennsylvania Courts to citizens of Delaware County compiled from voter registration, driver's license, tax base, and welfare rolls; the data from which the summons are based is updated each October by the Administrative Office of Pennsylvania Courts; and the information loaded into the County's system does not indicate a citizen's race.[6] Ms. Alkins testified of the 800 summons issued, 214 citizens appeared for jury duty on April 29, 2014.[7] Ms. Alkins testified the process of issuing summons for a particular day is randomly generated by computer.[8] A computer program then randomly selected seventy people from those who appeared for jury duty to enter the venire for Mr. Edmonds's trial.[9] Ms. Alkins testified she did not know the racial composition of the 214 who appeared for jury duty on April 29, 2014 or those who did not appear for jury duty.[10] Ms. Paden also testified to the random selection of prospective jurors drawn from driver's licenses, voting registration, welfare lists, and tax rolls.[11]

The state court did not hear expert evidence regarding the racial demography of Delaware County. The judge ruled the venire was not unconstitutionally defective.

The jury convicted Mr. Edmonds after three days of trial. The trial court sentenced Mr. Edmonds to life imprisonment without the possibility of parole.

### *Mr. Edmonds's appeal and post-conviction arguments.*

Mr. Edmonds timely filed a direct appeal arguing the trial court erred in denying his motion to strike the entire seventy-person jury panel because it contained only one African American, erred in denying his *Batson* challenge to the Commonwealth's for-cause strike of the only African American juror, and erred in evidentiary motions not relevant here. The Pennsylvania Superior Court affirmed the judgment of sentence.[12] The Pennsylvania Supreme Court denied Mr. Edmonds's petition for allowance of appeal.

Mr. Edmonds filed a timely pro se petition for relief under Pennsylvania's Post Conviction Relief Act.[13] He did not raise his ineffective assistance claim regarding statistical evidence. He requested, and the post-conviction court appointed, counsel. Mr. Edmonds pro se moved to discharge his post-conviction counsel and have the post-conviction court appoint new counsel. The post-conviction court denied his motion. Post-conviction counsel filed a *Finley* "no merit" letter and moved to withdraw his appearance.[14] Mr. Edmonds responded to the "no merit" letter. Mr. Edmonds failed to raise his ineffective assistance of counsel claim regarding statistical evidence in his response to the "no merit" letter. The post-conviction court granted counsel's application to withdraw his appearance and noticed its intent to dismiss the post-conviction petition without an evidentiary hearing.

The post-conviction court dismissed Mr. Edmonds's petition. He timely appealed to the Pennsylvania Superior Court. The Pennsylvania Superior Court refused to consider Mr.

Edmonds's claims because he failed to file a Pennsylvania Rule of Appellate Procedure 1925(b) statement and found his claims waived. The Pennsylvania Supreme Court denied a petition for allowance of appeal.[15]

### *Mr. Edmonds's five timely habeas claims.*

Mr. Edmonds pro se filed a habeas petition raising five issues: (1) "Did the state courts violate clearly established federal law where they denied Petitioner's general *Batson* objection to the fact that the entire jury pool contained only one African American?"; (2) "Did the state courts violate clearly established federal law where they denied [Petitioner's] *Batson* challenge by striking the only African American juror of entire jury panel?"; (3) "Did the state courts misapply clearly established federal law when they failed to find [trial counsel] ineffective for failing to call [witness] to rebut the Commonwealth's contention that the telephone conversation [Petitioner] made from the Delaware County Jail contained discussions about receiving money for a contract killing?"; (4) "Did the state courts misapply clearly established federal law when they failed to find [trial counsel] ineffective for failing to investigate and present [witness] where [witness's] testimony would have verified the account of events that [Petitioner] gave in his statement to police?"; and (5) "Did the state courts misapply clearly established federal law when they failed to find [trial counsel] ineffective for failing to object to the presentation of Commonwealth witness … solely for the purpose of having [witness] repeatedly refuse to answer questions in front of the jury?"[16]

Mr. Edmonds did not claim ineffectiveness of counsel relating to the challenge to a fair cross-section of Delaware County on the jury.  Judge Reid found the fair cross-section jury habeas claims fail on their merits and recommended we deny them.[17] Judge Reid also found his three

ineffective assistance of counsel claims as procedurally defaulted and recommended we dismiss them.[18]

### *Mr. Reid objects to one finding and raises a new ineffectiveness claim.*

Mr. Edmonds objects only to Judge Reid's recommendation we deny his habeas claim based on a *Batson* challenge to the jury venire.[19] Mr. Edmonds seemingly recognizes the difficulty in his objection because he then suggests - should we adopt Judge Reid's analysis - "it is clear" his trial counsel and direct appeal counsel "rendered ineffective assistance of counsel at trial during the … pre-trial hearing, in failing to present any statistical evidence to support [his] underlying claim, as well as on direct appeal to the Superior Court of Pennsylvania."[20]

Concerned with the timeliness and possible waiver of Mr. Edmonds's alternative previously unpleaded ineffectiveness claim, we ordered Mr. Edmonds show cause why his new ineffectiveness "statistical evidence" claim is not time-barred.[21] He responded if we find his new ineffective assistance claim is procedurally defaulted, we should excuse his default under *Martinez v. Ryan*.[22] The Commonwealth responds Mr. Edmonds's new ineffective assistance of counsel claim is waived, time-barred, and not excused by *Martinez*.[23]

## II.   Analysis

We today review Mr. Edmonds's one objection to Judge Reid's recommendation. We overrule this objection. The Supreme Court's *Batson* analysis is not at issue when challenging the entire jury panel. Rejecting Mr. Edmonds's petition on the fair cross-section argument, Judge Reid found Mr. Edmonds failed to argue a systematic exclusion of African American jurors violated his right to a fair cross-section of County citizens and he failed to come forward with facts supporting such an argument.[24]

Mr. Edmonds's new ineffective assistance of counsel claim relating to statistical evidence is waived and time-barred. There is no basis to allow Mr. Edmonds's new ineffectiveness claim to relate back to his timely habeas claims. We deny Mr. Edmonds's habeas petition.

### A. We overrule Mr. Edmonds's objection to Judge Reid's recommendation we deny his challenge to the make-up of the jury panel.

Congress, through the Antiterrorism and Effective Death Penalty Act ("AEDPA"), directs we "shall not" grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[25] As the Supreme Court instructs, this is a "highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt."[26] Mr. Edmonds argues Judge Reid erred in finding the Pennsylvania Superior Court's decision: (1) is not contrary to federal law and (2) is not based on an unreasonable determination of the facts.

Mr. Edmonds first argues the Pennsylvania Superior Court violated clearly established federal law by relying on *Commonwealth v. Craver*[27] in denying his objection to the jury venire as containing only one African American. In *Craver*, a criminal defendant convicted of murder in Pennsylvania state court challenged the jury venire summoning procedures he claimed systematically excluded from the pool of prospective jurors African Americans, a certain age-range of adults, and the economically disadvantaged.[28] Under the United States Supreme Court's decision in *Duren v. Missouri*, the "systematic exclusion" of persons during jury selection resulting in jury pools "not reasonably representative of the community" denies a criminal defendant his

6

Sixth and Fourteenth Amendment rights to a jury "selected from a fair cross section of the community."[29]

Relying on *Duren*, the Pennsylvania Supreme Court in *Craver* held to establish a prima facie violation of the right to a jury array fairly representative of the community, a defendant must show: "(1) the group allegedly excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such people in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process."[30] The term "systematic" means "caused by or inherent in the system by which juries were selected."[31] The elements articulated by the Pennsylvania Supreme Court in *Craver* are identical to the elements in *Duren*.[32]

The Pennsylvania Superior Court reviewing Mr. Edmonds's challenge to the jury venire on direct appeal applied all three of the *Craver* elements and found he failed to make a prima facie showing. It reasoned even if Mr. Edmonds met the first two prongs of the *Craver* elements, he did not meet the third prong because he failed to argue the underrepresentation of African Americans in the jury pool is due to a systematic exclusion.[33] The Pennsylvania Superior Court cited to the testimony of Ms. Alkins at the pre-trial hearing. Ms. Alkins testified to the random nature of the jury selection process. She testified to four sources from which prospective jurors are selected: voter registration lists; driver's license lists; tax rolls; and welfare rolls. She testified the random selection does not indicate the race of prospective jurors.[34] Based on the evidence adduced at the hearing, the Superior Court concluded the County's jury summons procedure does not systematically produce jury panels in which African Americans are underrepresented.[35]

Judge Reid concluded the Pennsylvania Superior Court properly applied the three *Craver* elements to the testimony from the pre-trial hearing. Judge Reid found Mr. Edmonds, while

7

claiming a violation of his Sixth Amendment right to a fair cross-section of Delaware County residents in his jury panel, did not argue the claimed violation is due to a systematic exclusion of African American jurors or identify facts supporting such an argument. Judge Reid concluded the Pennsylvania Superior Court's reliance on *Craver* is neither contrary to nor an unreasonable application of clearly established federal law.[36]

Mr. Edmonds objects to Judge Reid's conclusion regarding the reliance and application of *Craver*. He contends Judge Reid erred because it is the Commonwealth's burden to "rebut the prima facie showing of an absence of discriminatory intent" and, absent "statistical evidence presented to the state court," the testimony of Ms. Alkins at the pre-trial hearing is insufficient to rebut the presumption.[37]

Mr. Edmonds does not provide authority the Commonwealth has the burden to "rebut the prima facie showing of an absence of discriminatory intent."[38] He is incorrect on this burden. To establish a prima facie claim of a fair cross-section violation under *Craver* and *Duren*, Mr. Edmonds must show: "(1) blacks were a '"distinctive' group in the community"; (2) "representation of [blacks] in venires from which juries [were] selected [was] not fair and reasonable in relation to the number of such persons in the community"; ***and*** (3) "this underrepresentation [was] due to systematic exclusion of [blacks] in the jury selection process."[39] If Mr. Edmonds meets his burden, the burden shifts to the Commonwealth to "bear[] the burden of justifying this infringement by showing attainment of a fair cross section to be incompatible with a significant state interest."[40] The Pennsylvania Superior Court concluded Mr. Edmonds did not meet his burden at the third prong.

Mr. Edmonds did not meet his burden of showing underrepresentation of African Americans caused by systematic exclusion in the jury selection process. We are guided by our

8

Court of Appeals's 2019 analysis in *Howell v. Superintendent Rockview SCI* finding even if the demographic analysis is found inadequate under *Craver*'s second prong, the jury array is constitutionally permissible if the petitioner cannot show systematic exclusion in the jury selection process.[41] Our Court of Appeals instructs trial judges facing a fair cross-section challenge under *Craver*'s third element must "consider the nature of the system, length of time studied, and 'efforts at reform to increase the representativeness of jury lists' in determining whether the jury selection system caused the under-representation."[42] Mr. Edmonds did not offer a basis to find "a large discrepancy over time such that the system must be said to bring about the underrepresentation."[43]

The testimony of Ms. Alkins and Ms. Paden at the pre-trial hearing confirmed the facially neutral selection process: Delaware County issued 800 summons for jury duty through the Administrative Office of Pennsylvania Courts to Delaware County citizens compiled from voter registration, driver's license rolls, tax base rolls, and welfare rolls; the data from which the summons are based is updated each October by the Administrative Office of Pennsylvania Courts; the information loaded into the County's system does not indicate a citizen's race;[44] the process of issuing summons for a particular day is randomly generated by computer;[45] a computer program then randomly selected seventy people from those who appeared for jury duty to go into the venire for Mr. Edmonds' trial;[46] and Ms. Alkins testified she did not know the racial composition of the citizens who appeared for jury duty or those who did not appear for jury duty.[47]

Mr. Edmonds did not present evidence to the contrary. We overrule Mr. Edmonds's objection to Judge Reid's Report and Recommendation.

### B. Mr. Edmonds's new ineffective assistance argument is waived and time-barred.

Mr. Edmonds asserts prejudice by trial counsel's failure to gather statistical evidence to support his burden of showing Delaware County systematically excluded African American jurors

9

from the jury panel. He argues this decision could not have been the result of a rational, strategic decision. He argues post-conviction counsel's failure to raise this issue is not a rational, strategic decision. He argues trial counsel should have obtained: (a) census data from 2010-2014 for Pennsylvania and Chester and Delaware Counties; (b) Pennsylvania Department of Motor Vehicle records from 2001-2014; (c) voter registration lists for Delaware County; (d) state and federal tax rolls for Chester and Delaware Counties; (e) Department of Public Welfare Rolls for Chester and Delaware Counties; and (f) "any other sources of available records from which Petitioner's petit jury was chosen from."[48]

### 1. Mr. Edmonds waived his new ineffectiveness claim.

Recognizing we may adopt Judge Reid's sound analysis, Mr. Edmonds now pro se blames his lawyers for failing to adduce the evidence necessary to strike the entire jury panel.

Mr. Edmonds cannot raise grounds for habeas relief for the first time in objections to a magistrate judge's report and recommendation. Local Rule of Civil Procedure 72.1 IV(c) requires: "All issues and evidence shall be presented to the magistrate judges, and unless the interest of justice requires it, new issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge." Mr. Edmonds waived his new ineffective assistance of counsel claim.[49]

### 2. Mr. Edmonds's new ineffectiveness claim is time-barred.

Mr. Edmonds's new alternative ineffectiveness claim is also time-barred. Congress in section 2244(d) provides a one-year statute of limitations "to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."[50] Mr. Edmonds filed his habeas petition on December 14, 2020 but he did *not* claim ineffective assistance of counsel for failing to obtain statistical evidence to show systematic exclusion of African Americans from jury

10

pools. Mr. Edmonds did not raise this ineffective assistance of counsel claim until his October 8, 2021 Objections to Judge Reid's Report and Recommendation, well after the one-year limitations period. His new ineffective assistance of counsel claim is time-barred.

The statute of limitations begins to run from the *latest* of "(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."[51] The statute of limitations is tolled "during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."[52]

Mr. Edmonds's judgment of sentence became final on June 21, 2016, ninety days after the Pennsylvania Supreme Court denied his petition for allowance of appeal.[53] Mr. Edmonds had one year to file a post-conviction petition.[54] Mr. Edmonds timely petitioned for post-conviction relief on November 10, 2016, 142 days into his one-year period in which to file the post-conviction petition. This left a balance of 223 days during which his one-year limitations period to file a habeas petition remained tolled. The Pennsylvania Supreme Court denied Mr. Edmonds's petition for allowance of appeal on August 18, 2020. Mr. Edmonds had 223 days from August 18, 2020 to file a habeas petition; that is, March 29, 2021.

Mr. Edmonds timely petitioned for habeas relief on December 14, 2020. He timely raised two challenges to the state court's holdings and three ineffectiveness challenges. He did not raise an ineffectiveness claim based on counsel's efforts during jury selection until objecting to Judge Reid's Report and Recommendation on October 8, 2021. His claim is untimely unless Mr. Edmonds shows a basis for us to toll the limitations or the alternative claim can relate back to his timely December 14, 2020 objections.

### 3. There is no basis to toll the limitations period.

Mr. Edmonds bears the burden of showing we can toll the one-year limitations period under a theory of statutory tolling, equitable tolling, or based on actual innocence. He does not argue for tolling. He offers no basis to toll the one year limitations period.

### 4. Mr. Edmonds's new ineffectiveness claim does not relate back to his timely ineffectiveness claims.

Habeas Corpus Rule 2(c) mandates petitioners to "specify all the grounds for relief available" in their petition.[55] The Federal Rules of Civil Procedure may be applied to habeas proceedings to the extent they are not inconsistent with any applicable statute or rule.[56] Habeas petitions may be amended or supplemented to the extent provided in the rules of civil procedure applicable to civil actions.[57] Federal Rule of Civil Procedure 15 governs the amendment and relation back of a habeas petition.[58] "Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings 'ar[i]se out of the conduct, transaction, or occurrence.'"[59]

The Supreme Court in *Mayle v. Felix* instructed an amended habeas petition does not relate back when it "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."[60] Claims asserted after the one-year limitations period do not relate back simply because they relate to the same trial, conviction, or sentence.[61]

Mr. Edmonds's newly asserted ineffective assistance theory does not relate back to his timely habeas petition. His new claim is different in "time and type" to the five claims in his original petition. Mr. Edmonds asserting ineffective assistance claims in his petition is insufficient alone to relate back his new ineffective assistance claim.[62] We assess whether the new claim is "tied to a common core of operative fact" of the original claims to determine whether relation back is in order.[63] We will allow relation back if Mr. Edmonds's timely petition gave the Commonwealth "fair notice of the general fact situation and the legal theory" offered in his untimely objections.[64] Mr. Edmonds's new claim is either unrelated to the general fact situations raised in the five timely claims or raises an entirely different legal theory relating to the fair cross-section claim.

Mr. Edmonds's petition asserts three ineffectiveness claims relating to his lawyer's treatment of witnesses and evidence. He does not challenge his lawyer's effectiveness in jury selection. The factual basis of Mr. Edmonds's ineffective assistance claim relates to his trial counsel's trial conduct. The timely claims relate to trial conduct and the belated claim relies entirely on conduct occurring before trial began. The new claim is not related to the general same conduct, transaction, or occurrence required for relation back.[65]

Mr. Edmonds's two other timely habeas claims arguably challenge the same general facts concerning jury selection as now raised in his untimely objection. One claim challenges the striking of the only African American member of the jury pool under *Batson*. Those facts and legal arguments are factually and legally distinct from the law and operative facts relating to the fair cross-section of the County argument.

Mr. Edmonds's remaining timely habeas claim challenges the Pennsylvania courts for not striking the entire jury pool as violative of federal law. His claim focuses entirely on the state courts' alleged errors.

We could find this challenge falls within the same occurrence addressed in the untimely objection and is arguably tied to a common core of operative facts.[66] But there is no basis to find the timely habeas claim gave fair notice to the Commonwealth of Mr. Edmonds changing his theory and now arguing his failure to meet the burden under *Craver* is due to his lawyer's ineffective assistance. He is changing the entire legal theory. We cannot find a basis to allow an ineffective assistance claim to relate back to a substantive claim simply because a Report and Recommendation rejects the substantive claim. Mr. Edmonds is essentially saying: If I lose on the substance which I have argued at every stage, then my loss is because my lawyers provided ineffective assistance on this issue. The legal theories are not the same. The substantive claim assumes the lawyers met their burden and the Commonwealth did not. It focuses on the facts relating to the quantum of evidence reviewed by the state court. Mr. Edmonds's alternative waived claim focuses on whether his lawyers so deviated from the standard expected of counsel in criminal matters so as to call into question the jury's verdict. Mr. Edmonds repeatedly swore his lawyers met the burden. He cannot now turn around and argue they did not in the same case with an entirely different theory.

Mr. Edmonds's newly asserted ineffective assistance claim based on his trial counsel not adducing sufficient evidence to meet the standards do not relate back to his timely habeas petition.

### C. We find no basis for a certificate of appealability.

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the

detention complained of arises out of process issued by a State court."[67] We may issue a certificate of appealability if "the applicant has made a substantial showing of the denial of a constitutional right."[68] A petitioner "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[69] We decline to issue a certificate of appealability. Reasonable jurists could not disagree with our resolution of Mr. Edmonds's constitutional claims. Mr. Edmonds's objections to Judge Reid's Report & Recommendation lack merit.

### III.  Conclusion

We overrule Mr. Edmonds's Objection, approve and adopt Judge Reid's detailed Report and Recommendation, and deny and dismiss Mr. Edmonds's habeas petition. Mr. Edmonds fails to make a "substantial showing of the denial of a constitutional right" required under 28 U.S.C. § 2253(c)(2). We deny a certificate of appealability.[70]

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[2] *Commonwealth v. Edmonds*, No. 1936-13, Delaware County Court of Common Pleas, Notes of Testimony ("N.T.") April 29, 2014 at 3.

[3] *Edmonds*, No. 1936-13, N.T. April 29, 2014 at 5.

[4] *Id.* at 123-24; 130-32. Mr. Edmonds's trial counsel also objected to the dismissal of the only African American juror for cause on the Commonwealth's motion. During voir dire, the only African American on the panel indicated he does not understand English well, has a diagnosed learning disability, received special education in school until the ninth grade, had difficulty understanding the court's instructions, and required the assistance of his girlfriend to fill out his jury questionnaire. *Id.* at 84-101. The Commonwealth moved to strike the juror for cause based on his learning disability making him unable to understand instructions. Defense counsel objected to the motion to strike for cause. The trial court granted the Commonwealth's motion to strike the juror for cause, finding the reasons for striking the African American juror were race-neutral. The Pennsylvania Superior Court affirmed the trial court's decision. On habeas review, Judge Reid concluded the state court's decision is not contrary to federal law, whether the claim is a *Batson* claim or an equal protection claim. Judge Reid also found the Pennsylvania Superior Court's

decision is not based on an unreasonable interpretation of the facts because the sole African American juror told the court his learning disabilities prevented his understanding of the court's instructions. Mr. Edmonds does not object to this portion of Judge Reid's Report and Recommendation.

[5] *Id.* at 132-65; 165-79.

[6] *Id.* at 147-48.

[7] *Id.* at 149.

[8] *Id.* at 148, 159.

[9] *Id.* at 148-49. Ms. Alkins swore 214 of the 800 summons appeared for jury duty on the day Mr. Edmonds's trial began. *Id.* at 148. Of the 214, seventy were randomly selected to enter the pool for Mr. Edmonds's trial. Ms. Alkins swore of the 800 summons, 266 jurors qualified for jury duty, attributing the number to requests for excuses for prospective jurors over the age of seventy; those with medical issues; practicing attorneys; and approximately 200 people who ignored the summons. *Id.* at 149-51.

[10] *Id.* at 149-151.

[11] *Id.* at 168-72.

[12] *Commonwealth v. Edmonds*, No. 2294 EDA 2014, 2015 WL 6663271 (Pa. Super. Ct. Oct. 30, 2015).

[13] 42 Pa. Cons. Stat. § 9541, *et seq.*

[14] *Pennsylvania v. Finley*, 481 U.S. 551 (1987).

[15] *Commonwealth v. Edmonds*, No. 2506 EDA 2019, 2020 WL 1303728 (Pa. Super. Ct. Mar. 18, 2020).

[16] ECF Doc. No. 1.

[17] We may refer a habeas petition to Magistrate Judge Reid for "proposed findings of fact and recommendations" for disposition. 28 U.S.C. § 636(b)(1)(B). If objections are filed to the proposed findings and recommendations, we must conduct a *de novo* review of those portions of the Report and Recommendation to which objections are made. 28 U.S.C. § 636(b)(1). We "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

[18] ECF Doc. No. 16.

[19] ECF Doc. No. 19. As analyzed below, a challenge the jury fails to fairly represent a cross-section of the community falls under *Duren v. Missouri*, 439 U.S. 357 (1979).

[20] ECF Doc. No. 19 at 8.

[21] ECF Doc. No. 21.

[22] 566 U.S. 1 (2012).

[23] ECF Doc. No. 25.

[24] ECF Doc. No. 16 at 9.

[25] 28 U.S.C. § 2254(d).

[26] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997) and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

[27] 688 A. 2d 691 (Pa. 1997).

[28] *Id.* at 695.

[29] *Duren v. Missouri*, 439 U.S. 357, 358-59 (1979) (internal quotations omitted) (citing *Taylor v. Louisiana*, 419 U.S. 522 (1975)). In *Duren*, the Supreme Court held a Missouri law providing an automatic exemption from jury service for women requesting not to serve constitutes systematic exclusion violating the Constitution's fair cross-section requirement. *Id.* at 359; *see also Howell v. Superintendent Rockview SCI*, 939 F.3d 260, 262, 264 (3d Cir. 2019) (criminal defendants are deprived of their Sixth Amendment right to a jury selected from a broad representation of the community when distinctive groups are systematically excluded from the jury selection process) (citing *Duren*, 439 U.S. at 363-64 and *Taylor*, 419 U.S. at 530-31)).

[30] *Craver*, 688 A.2d at 696 (citing *Duren*, 439 U.S. at 364).

[31] *Id.* (citing *Duren*, 439 U.S. at 366-67).

[32] Under the Supreme Court's analysis in *Duren*, a defendant claiming a violation of the "fair cross section of the community requirement" must make a prima facie showing: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren*, 439 U.S. at 364.

[33] *Edmonds*, 2015 WL 6664371 at *2.

[34] *Id.* at *3.

[35] *Id.*

[36] ECF Doc. No. 16 at 8-9.

[37] Mr. Edmonds now attributes the lack of statistical evidence to the ineffectiveness of his trial counsel and direct appeal counsel, a claim we address in the next section.

[38] ECF Doc. No. 19 at 7.

[39] *Howell*, 939 F.3d at 265–66 (alterations in original) (quoting *Duren*, 439 U.S. at 364); *United States v. Savage*, 970 F.3d 217, 254 (3d Cir. 2020) (quoting *Duren*, 439 U.S. at 364).

[40] *Savage*, 970 F.3d at 254, n.31 (quoting *United States v. Weaver*, 267 F.3d 231, 237 (3d Cir. 2001)).

[41] *Howell*, 939 F.3d at 269 (citing *Weaver*, 267 F.3d at 244).

[42] *Id.* (quoting *Ramseur v. Boyer*, 983 F.2d 1215, 1234-35 (3d Cir. 1992) (en banc)).

[43] *Id.* (quoting *Weaver*, 267 F.3d at 244).

[44] *Edmonds*, No. 1936-13, N.T. April 29, 2014 at 147-48.

[45] *Id.* at 148, 159.

[46] *Id.* at 148-51.

[47] *Id.* at 149-51; 168-72.

[48] ECF Doc. No. 22 at 17.

[49] *See, e.g.*, *Hawes v. Mahalley*, No. 17-5316, 2020 WL 1508267, at *10 (E.D.Pa. Mar. 30, 2020) (collecting cases finding "arguments cannot be raised for the first time in an objection to a Magistrate Judge's report and recommendation; rather any such arguments are deemed waived"); *Codner v. Warden-Pike Cnty.*, No. 15-5176, 2016 WL 5721199, at *4 (E.D. Pa. Oct. 3, 2016) (same); *see also Boston v. Mooney*, 141 F. Supp. 3d 352, 365–66 (E.D. Pa. 2015); *Ramos v. Kyler*, No. 03-2051, 2004 WL 828363, at *4 (E.D. Pa. Apr. 12, 2004).

[50] 28 U.S.C. § 2244(d)(1).

[51] 28 U.S.C. § 2244(d)(1).

[52] *Id.* § 2244(d)(2).

[53] Under Pennsylvania's Post Conviction Relief Act, "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa. Cons. Stat. § 9545(b)(3). The Pennsylvania Supreme Court denied the petition for allowance of appeal

---

on March 23, 2016. *See Commonwealth v. Burton*, 158 A.3d 618, 623, n.7 (Pa. 2016) (judgment of sentence becomes final ninety days after Pennsylvania Supreme Court denies petition for allowance of appeal).

[54] 42 Pa. Cons. Stat. § 9545(b)(1).

[55] Rules Governing Section 2254 Cases, Rule 2(c)(1), 28 U.S.C. foll. § 2254.

[56] *Id.* Rule 12.

[57] 28 U.S.C. § 2242.

[58] *Mayle v. Felix*, 545 U.S. 644, 655 (2005).

[59] *Id*. at 655.

[60] *Id.* at 650.

[61] *Id*. at 662.

[62] *See Hodge v. United States*, 554 F.3d 372, 378 (3d Cir. 2009) (citing *Mayle*, 545 U.S. at 664) (explaining court must assess whether both ineffective assistance claims are tied to common core of operative facts).

[63] *See Mayle*, 545 U.S. at 664.

[64] *Bensel v. Allied Pilots Ass'n,* 387 F.3d 298, 310 (3d Cir. 2004).

[65] *See Montanez v. Oberlander*, No. 19-3730, 2021 WL 4757484, at *12 (E.D. Pa. March 1, 2021) (citing *Whitaker v. Superintendent Coal Township SCI*, 721 F. App'x 196, 202 (3d Cir. 2018)).

[66] *Mayle*, 545 U.S. at 664.

[67] 28 U.S.C. § 2253(c)(1)(A).

[68] 28 U.S.C. § 2253(c)(2).

[69] *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

[70] *Slack v. McDaniel*, 529 U.S. 473 (2000).